**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SHAKEITH PIGFORD,

                             Plaintiff,

        v.                                     No. 07-CV-687
                                                   (FJS/DRH)

TURRIGLIO, Officer, Greene Correctional
Facility,

                             Defendant.

---

**APPEARANCES:**                                  **OF COUNSEL:**

SHAKEITH PIGFORD
Plaintiff Pro Se
07-R-0776
Greene Correctional Facility
Post Office Box 975
Coxsackie, New York 12051

HON. ANDREW M. CUOMO                SHOSHANAH V. ASNIS, ESQ.
Attorney General for the                  Assistant Attorney General
  State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Shakeith Pigford ("Pigford")), an inmate in the custody of the New York

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42

U.S.C. § 1983 alleging that defendant Turriglio ("Turriglio"), a DOCS employee, violated his

constitutional rights under the First and Eighth Amendments.  Compl. (Docket No. 1).

---

      [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Presently pending is Turriglio's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  Docket No. 16.  Pigford has not opposed the motion.[2]  For the following reasons, it is recommended that Turriglio's motion be granted.

### I. Background

The facts are related herein in the light most favorable to Pigford as the non-moving party.  See subsection II(A) infra.

At all relevant times, Pigford was incarcerated at Greene Correctional Facility ("Greene").  See Compl.  On June 3, 2007, Turriglio, a corrections officer, asked Pigford to produce his identification card ("ID card") while Pigford was working at the mess hall.  Id. ¶ 6.  Pigford could not find it.  Id.  Pigford admitted that he was aware that it was facility policy for inmates to have their ID card on their person while at work.  Id.  However, Pigford had temporarily misplaced his card, forgetting that he had placed it in his sock.  Id.

Turriglio began writing a misbehavior report.  Id.  Shortly thereafter, Pigford recalled that he had placed his ID card in his sock and informed Turriglio that he had found it.  Id. Turriglio ordered Pigford to stay behind "and clean up the pot room," finishing his duties after all other inmates had left the mess hall.  Id.  As Pigford passed through a metal detector returning to his unit, Turriglio ordered him to "clear the metal detector and get on

---

[2]DOCS records indicate that Pigford remains incarcerated at the address listed above.  See DOCS Inmate Information (visited Sept. 2, 2008), <http://nysdocslookup. docs.state.ny.us/GCA00P00/WIQ1/WINQ000>.  His earliest release date is April 12, 2011. Id.  Further, an order sua sponte granting Pigford an extension of time to serve a response and advising him of the potential consequences of failing to do so was received at Pigford's facility of incarceration for delivery to him.  See Docket No. 19.  Thus, Pigofrd received notice of his opportunity to respond, the consequences of failing to do so, and has nevertheless failed to oppose Turriglio's motion.

the wall." Id. Pigford complied, at which time Turriglio approached him from behind and "started cursing at [Pigford] . . . [and] slap[ping him] in the head numerous times . . . ." Id. Turriglio then produced a pocket knife and threatened to "say he took the knife from [Pigford] and [that Pigford] cut him trying to take it." Id. Additionally, Pigford claims that while he was praying on June 21, 2007, Turriglio made disturbing and prejudicial comments about Pigford practicing his Muslim religion. Id. at 7. Turriglio also stated that "Muslims are terrorists [and that Pigford should] . . . go overseas if [he] want[s] to be a Muslim." Id. Turriglio had made such comments on other occasions. Id. This action followed.

## II.  Discussion

In his complaint, Pigford alleges that Turriglio violated his (1) Eighth Amendment rights by subjecting him to excessive force during the incident on June 3, 2007, and (2) First Amendment rights by infringing his ability to exercise his religion. Turriglio moves for judgment on the pleadings asserting that (1) Pigford has failed sufficiently to plead either a First or Eighth Amendment claim, and (2) Turriglio is entitled to qualified immunity.

### A. Legal Standard

"After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)." Allan v. Woods, No. 05-CV-1280 (NAM/GJD), 2008 WL 724240, at *1 (N.D.N.Y. Mar. 17, 2008) (citing Maggette v. Dalsheim, 709 F.2d 800, 801 (2d Cir. 1983)).  "The test for evaluating a [Fed. R. Civ. P.] 12(c) motion is the same as that applicable to a motion to dismiss under

3

Fed. R. Civ. P. 12(b)(6)."  Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir.

1998); Burke v. New York, 25 F. Supp. 2d 97, 99 (N.D.N.Y. 1998) (Munson, J.).

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint that states no actionable

claim.  When considering a motion to dismiss, "a court must accept the allegations

contained in the complaint as true, and draw all reasonable inferences in favor of the non-

movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, "a 'complaint

which consists of conclusory allegations unsupported by factual assertions fails even the

liberal standard of Rule 12(b)(6)."  Gilfus v. Adessa, No. 5:04-CV-1368 (HGM/DEP), 2006

WL 2827132, at *3 (N.D.N.Y. Sept. 30, 2006) (citing De Jesus v. Sears, Roebuck & Co. 87

F.3d 65, 70 (2d Cir. 1996) (internal quotations omitted)).  Thus, dismissal is only warranted

if it appears, beyond a reasonable doubt, that the non-moving party cannot prove a set of

facts which would support his or her claim or entitle him or her to relief.  See Hishon v. King

& Spalding, 467 U.S. 69, 73 (1984); Harris v. City of N.Y., 186 F.3d 243, 247 (2d Cir. 1999).

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the

non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled
> to "special solicitude," . . . that a pro se litigant's submissions must be
> construed "liberally,". . . and that such submissions must be read to raise the
> strongest arguments that they 'suggest. . . . .  At the same time, our cases
> have also indicated that we cannot read into pro se submissions claims that
> are not "consistent" with the pro se litigant's allegations, . . or arguments that
> the submissions themselves do not "suggest, . . ." that we should not "excuse
> frivolous or vexatious filings by pro se litigants" . . . and that pro se status
> "does not exempt a party from compliance with relevant rules of procedural
> and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, __

4

F.3d __, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).

## B. First Amendment

Pigford alleges that his First Amendment rights were violated when Turriglio made verbal threats which caused Pigford to fear continuing to pray.  "The First Amendment . . . guarantees the right to the free exercise of religion." Johnson v. Guiffere, No. 04-CV-57 (DNH), 2007 WL 3046703, at *4 (N.D.N.Y. Oct. 17, 2007) (citing Cutter v. Wilkinson, 544 U.S. 709, 719 (2005).  "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)).   This right "is not absolute or unbridled, and is subject to valid penological concerns . . . ." Johnson, 2007 WL 3046703, at * 4; see also Salahuddin v. Goord, 467 F.3d 263, 274 (2d Cir. 2006) (holding that while "prisoners do not abandon their constitutional rights at the prison door, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.") (internal citations and quotations omitted).

"A determination of whether the refusal to permit attendance at a religious service [violates the First Amendment]  hinges upon the balancing of an inmate's First Amendment free exercise right[] against institutional needs of . . . operating prison facilities . . . ." Johnson, 2007 WL 3046703, at *4. "The governing standard is one of reasonableness,

taking into account whether the particular regulation affecting some constitutional right asserted by a prisoner is reasonably related to legitimate penological interests." Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir. 1990) (citations omitted).

In this case, Pigford has not asserted any infringement on the free exercise of his religious beliefs.  His complaint lacks allegations that Turriglio prevented or interfered with his religious practice.  Liberally construing the allegations of the complaint and viewing them in the light most favorable to Pigford, Pigford was not prevented from engaging in prayer and, despite Turriglio's alleged comments, his actions did not stop Pigford from exercising his Muslim faith and participating in its daily rituals.

Accordingly, Pigford has not alleged facts that would entitle him to relief and Turriglio's motion for judgment should be granted on this ground.

### C. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. CONST. amend. VIII.  The Supreme Court has established that inmates enjoy Eighth Amendment protection against the use of excessive force and may recover damages for its violation under 42 U.S.C. § 1983.  Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).  The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain."  Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000).  To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements.  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and

requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262.  However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (citations omitted).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Id. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7).  In determining whether a defendant acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotations and citations omitted).

In this case, Pigford has not alleged facts sufficient to overcome the objective prong of the Eighth Amendment analysis. See Headley v. Fisher, No. 06-CV-6331 (PAC/KNF), 2008

WL 1990771, at *5 (S.D.N.Y. May 7, 2008) (holding that plaintiff's claims that defendant "hit him without a justifiable reason . . . does not elevate a single slap to the level of excessive force under the Eighth Amendment," as it is only a <u>de minimus</u> use of force); <u>Kemp v. LeClaire</u>, No. 03-CV-8445, 2007 WL 776416, at *10 (W.D.N.Y. Mar. 12, 2007) (slapping an inmate's testicle during a pat-frisk does not result in a serious injury).

Generally, the failure to allege facts sufficient to establish the objective prong of the analysis renders the claim subject to dismissal unless Pigford can raise a question of fact as to whether Turriglio's conduct was undertaken with malice for the very purpose of causing harm to Pigford.  <u>Blyden</u>, 186 F.3d at 263 (citing <u>Hudson</u>, 503 U.S. at 9).  In this case, Pigford has not alleged facts sufficient to indicate that Turriglio's conduct was undertaken with malice.  Turriglio was conducting a pat-frisk search at the time in question. His actions accorded with facility policy and penological interests, and the fact that Pigford was allegedly slapped and mildly threatened are not sufficient to allege that Turriglio's actions were repugnant to the conscience of mankind.  <u>Cf.</u> <u>Beckles v. Bennett</u>, No. 2008 WL 821827, at *20-21 (S.D.N.Y. March 26, 2008) (denying a motion for summary judgment as, although plaintiff neither identified the claim nor alleged that the frisk was pretextual as opposed to penological, "the minimal nature of Plaintiff's injury would become less significant [since e]ven minor injuries can be sufficient . . . where the force was entirely unwarranted.") (<u>citing</u> <u>Hudson</u> 503 U.S. at 7-9).  Additionally, Pigford alleges no significant injury.

Accordingly, Turriglio's motion should be granted on this ground.

## D. Qualified Immunity

    Turriglio also contends that he is entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

    A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Pigford's allegations as true, he has not shown that Turriglio violated his constitutional rights.

    Accordingly, it is recommended that Turiglio's motion on this ground be granted.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Turriglio's motion for judgment on the pleadings (Docket No.16) be **GRANTED** in all respects and that judgment be entered in favor of Turriglio on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  September 3, 2008
        Albany, New York                         David R. Homer
                                          _____
                                          United States Magistrate Judge